```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


MICHAEL and STACY PERKINS,        :
individually and on behalf of     :   HONORABLE JOSEPH E. IRENAS
all those similarly situated,     :   CIVIL ACTION NO. 09-024 (JEI/JS)
                                  :
              Plaintiffs,         :         **OPINION**
                                  :
     v.                           :
                                  :
WASHINGTON MUTUAL, FSB;           :
WELLS FARGO HOME MORTGAGE;        :
AURORA LOAN SERVICES;             :
SHAPIRO & DIAZ; and               :
WASHINGTON MUTUAL BANK,           :
                                  :
              Defendants.         :


**APPEARANCES:**

LAW OFFICE OF LEWIS G. ADLER
By:  Roger C. Mattson, Esq.
     Lewis G. Adler, Esq.
26 Newton Avenue
Woodbury, New Jersey 08096
     Counsel for Plaintiffs

REED SMITH, LLP
By:  Diane A. Bettino, Esq.
     Mark S. Melodia, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08540
     Counsel for Defendant Wells Fargo Home Mortgage

LOWENSTEIN SANDLER PC
By:  Steven M. Hecht, Esq.
     Jason E. Halper, Esq.
65 Livingston Avenue
Roseland, NJ 07068
     Counsel for Defendant Aurora Loan Services

SCHWARTZ SIMON EDELSTEIN CELSO & KESSLER LLC
By:  Patrick D. Tobia, Esq.
44 Whippany Road, Suite 210
P.O. Box 2355
```

Morristown, NJ 07962
    Counsel for Defendant Shapiro & Diaz

**IRENAS**, Senior District Judge:

    This case is substantially similar to three cases the Court recently addressed: *Rivera v. Washington Mutual, et al.*, ___ F.Supp.2d ___, 2009 WL 2001175 (D.N.J. July 10, 2009) (Irenas, S.D.J.), *Martino v. Everhome Mortgage, et al.*, ___ F.Supp.2d ___, 2009 WL 2365160 (D.N.J. July 31, 2009) (Irenas, S.D.J.), and *Skypala v. Mortgage Electronic Registration Systems, Inc. et al.*, ___ F.Supp.2d ___, 2009 WL 2762247 (D.N.J. Sep. 1, 2009) (Irenas, S.D.J.) Plaintiffs (and putative class representatives) Michael and Stacy Perkins, like the plaintiffs in the above-cited cases, assert that the defendants charged and collected "various fees not authorized by the [mortgage] loan documents or applicable law" and "overcharg[ed] defaulting borrowers of residential mortgages[.]" (Amend. Compl. ¶ 31) As the Court remarked in *Martino*, "[t]he similarity of issues and timing of these cases is no accident." 2009 WL 2365160 at *1. The same attorney filed *Rivera*, *Martino*, *Skypala*, and the instant case, and the vast majority of the allegations in each case are identical. Thus, the Court is once again presented with an Amended Complaint that is "hopelessly muddled, mistated, and mangled." *Rivera*, 2009 WL 2001175 at *1. It is particularly remarkable that the instant Amended Complaint is so deficient, given that one of Plaintiffs'

2

current attorneys also represented them in the underlying foreclosure proceedings.  (See Amend. Compl. Ex. C)  But, the Court has made every effort to discern the alleged facts of the case and then rule on the pending Motions to Dismiss as set forth below.[1]

## I.

The recitation of the facts that follows is comprised of the sparse factual "background" as alleged in the Amended Complaint, along with information the Court has gleaned from the attachments to the Amended Complaint and the public documents Defendants have relied upon in their motions to dismiss.[2]

Plaintiffs executed the mortgage and note at issue in 1999. (Amend. Compl. ¶ 15)  Island Mortgage Network, Inc., a non-party to this suit, originated the loan.  (Id.)

On or about September 30, 2003, Defendant Shapiro & Diaz ("Shapiro") filed a foreclosure action against Plaintiffs on behalf of Defendants Aurora Loan Services ("Aurora"), Washington Mutual Bank ("WaMu"), and Wells Fargo Home Mortgage ("Wells

---

[1] As discussed at length in *Rivera,* the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The Court hereby incorporates by reference *Rivera's* discussion of this Court's CAFA jurisdiction, as well as the discussion of the *Rooker-Feldman* doctrine, *see* 2009 WL 2001175 at *5-6, *7 n.17, without repeating it here.

[2] The Court takes judicial notice of the public documents from Plaintiffs' prior bankruptcy case discussed *infra*.

3

Fargo").[3]  (Amend. Compl. ¶ 16)  On June 14, 2005, the Honorable Neil H. Shuster of the Superior Court of New Jersey, Chancery Division, entered a final judgment of foreclosure against Plaintiffs and in favor of WaMu.[4]  (Amend. Compl. Ex. B)  The foreclosure judgment was in the amount of $107,845.95, "together with costs . . . to be taxed, including a counsel fee of $1893.30[.]"  (Id.)

On October 11, 2005, Plaintiffs filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the District of New Jersey.  (Halper Cert. Ex. C; see Amend. Compl. ¶ 18)  Thereafter, Plaintiffs made an unspecified number of payments pursuant to the Chapter 13 plan.  (Amend. Compl. ¶ 23)

On November 2, 2005, WaMu filed a proof of claim with the bankruptcy court in the amount of $120,974.68.[5]  (Amend. Compl. Ex. A)  The itemized breakdown of that $120,974.68 sum included line items for "Principal Balance" and "Pre-petition Attorney Fees and Costs," in the amounts of $94,425.76 and $4,131.70,

---

[3] Although WaMu is named as a Defendant to this suit, the Court has no record of it having been served with process, nor has WaMu entered an appearance in this action.

[4] It is unclear from the Amended Complaint why the foreclosure action extended for almost two years prior to the entry of a final judgment.

[5] The proof of claim was filed on behalf of WaMu and Aurora, both of whom participated in preparing that document.  (Amend. Compl. ¶¶ 19, 20)

4

respectively. (Id.) On December 11, 2006, the Honorable Gloria M. Burns dismissed Plaintiffs' Chapter 13 bankruptcy proceeding for reasons including their failure to make all required pre-confirmation payments. (Halper Cert. Ex. B)

After the bankruptcy stay was vacated, the Gloucester County Sheriff's Office scheduled a sale of Plaintiffs' property. (Amend. Compl. Ex. D) After several adjournments, that sale was set to occur on February 28, 2007. (Id.) The Sheriff's Office prepared a Statement of Sale in preparation for selling Plaintiffs' property. (Id.) According to that Statement of Sale, the "Total Judgment" due was $124,231.77, including a line item for "Costs Taxed" in the amount of $1,893.30. (Id.)

In response to an inquiry from Plaintiffs, Shapiro prepared a letter dated February 8, 2007, indicating that a payment of $130,890.45 was necessary to pay off Plaintiffs' mortgage.[6] (Amend. Compl. Ex. C) That sum was inclusive of "attorney fees and costs[.]" (Id.) The letter was sent to Plaintiffs, with a copy also sent to their attorney, Lewis Adler. (Id.)

On February 21, 2007, Plaintiffs sold the property at issue to an unspecified purchaser for an unspecified amount. (Amend. Compl. ¶ 25) On February 26, 2007, the Sheriff's sale of the

---

[6] At some unspecified point, Plaintiffs' loan was assigned from WaMu and/or Aurora to Wells Fargo. (Amend. Compl. ¶ 24) Shapiro's letter of February 8, 2007, indicated that the $130,890.45 sum was payable to "Wells Fargo Home Mortgage, Inc." (Amend. Compl. Ex. C)

5

foreclosed property was cancelled at WaMu's request, because "a settlement [was] reached in full for $124,291.65."[7] (Amend. Compl. Ex. D)

The Amended Complaint asserts the following claims against WaMu, Wells Fargo, and Aurora: (1) breach of contract; (2) negligent servicing of the loan; (3) breach of the duty of good faith and fair dealing; (4) unjust enrichment; (5) "unfair and deceptive assessment and collection of fees"; (6) violation of the Fair Foreclosure Act, N.J.S.A. 2A:50-57(b)(3); (7) violation of New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a); (8) violation of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq.*; and (9) violation of New Jersey's Truth in Consumer Contracts, Warranty and Notice Act, N.J.S.A. 56:12-14.  Shapiro is a Defendant to claims 2 through 4 only.

Plaintiffs propose a statewide class and a nationwide class substantially identical to those proposed in *Rivera*.  *See Rivera*, 2009 WL 2001175 at *4-*5.

All Defendants presently move to dismiss the Amended Complaint in its entirety.  For the reasons that follow, their

---

[7] Paragraph 29 of the Amended Complaint alleges that "Plaintiffs paid the sums demanded in full on or about March 2, 2007."  To the extent that paragraph is intended to suggest that Plaintiffs paid the sum of $130,890.45 demanded in the payoff letter of February 8, 2007, that proposition is flatly contradicted by Plaintiffs' own exhibit, the Sheriff's Statement of Sale, which indicates that the parties settled the foreclosure action for $124,291.65.  (Amend. Compl. Ex. D)

6

motions will be granted.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III.

As done in *Rivera*, *Martino*, and *Skypala*, the Court begins

7

with the wrongful conduct alleged in the Complaint:

> At all times relevant hereto, AURORA, WAMU and Shapiro have engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law. The components of this scheme involve common tactics in which the Defendants have been overcharging defaulting borrowers of residential mortgages in the following manner, including but not limited to:
>
>> a) they charged attorneys fees and costs in excess of those actually incurred; specifically, $4,131.70 in fees and costs that are $2,238.40 greater than awarded by the court in the final judgment of $1,893.30.
>>
>> b) they charged interest in violation of the final judgment.
>>
>> c) FHA regulations limit attorneys fees see 24 CFR 203.552(B) to a maximum of $1350 in New Jersey.[8]

(Amend. Compl. ¶ 31 (caps in original))

The Court will consider each alleged wrongful act in turn.

**A.**

Plaintiffs first allege that Defendants "charged attorneys fees and costs in excess of those actually incurred; specifically, $4,131.70 in fees and costs that are $2,238.40 greater than awarded by the court in the final judgment of $1,893.30."

The $4,131.70 figure is among the itemized charges

---

[8] Notably, Defendant Wells Fargo is not mentioned at all in this crucial portion of the Amended Complaint. That deficiency notwithstanding, the Court will assume that the allegations of paragraph 31 are levied against Wells Fargo for the purposes of deciding the instant motions.

comprising the proof of claim for $120,974.68 filed by WaMu in Plaintiffs' Chapter 13 proceeding. Defendants, quite logically, have briefed their motions as if Plaintiffs allege that they were overcharged in that bankruptcy proceeding.

A somewhat different theory is advanced in Plaintiffs' opposition briefs than in paragraph 31(a) of their poorly drafted pleading. According to Plaintiffs, the $4,131.70 figure is relevant because:

> [T]he overcharges as reflected in the proof of claim were paid by the Plaintiff[s] when they paid off the mortgage upon the sale of their home. The charges were added to their account by Aurora. The proof of the overcharge is reflected in the proof of claim filed on behalf of Aurora.

(Pls.' Opp. Br. to Aurora at 2)  Thus, as apparently conceded by Plaintiffs, the Amended Complaint does not directly attack the bankruptcy proceedings.

Plaintiffs do, however, maintain that they paid an improper attorneys fee of $4,131.70 when they eventually settled the foreclosure action. This line of argument fails to state a claim for two independent reasons. As a threshold matter, no such theory is articulated in the Amended Complaint. Moreover, even if Plaintiffs had included such a theory in the Amended Complaint, it would fail because there is no indication that a $4,131.70 charge for attorneys fees was ever paid. The Sheriff's Statement of Sale includes a line item for "Costs Taxed" of $1,893.30 — the precise figure assessed in the final judgment of

9

foreclosure.[9]

As paragraph 31(a) of the Amended Complaint fails to plead wrongful conduct as a matter of law, all claims based on that allegation must be dismissed.  Those claims include Count 7 (entitled "New Jersey Court Rule"),[10] the Fair Foreclosure Act claim,[11] and the New Jersey Consumer Fraud Act claim, insofar as based on alleged violations of the New Jersey Court Rules or the Fair Foreclosure Act.[12]

**B.**

Plaintiffs' remaining two allegations of wrongful conduct

---

[9] Any suggestion that Plaintiffs paid $4,131.70 in attorneys fees in response to the payoff letter similarly fails.  As the Court stated *supra* n.7, the proposition that the sum demanded in the payoff letter was paid in full is not sustainable in light of the reported settlement for a lesser amount.  And, even if the demanded sum had been paid in full, any argument that the $4,131.70 charge was included therein would be pure speculation, given that the charges comprising the payoff figure of $130,890.45 were not itemized.

[10] Alternatively, there is no independent private right of action to remedy violations of New Jersey Court Rules.  *Rivera*, 2009 WL 2001175 at *8 n.18.

[11] Alternatively, the Fair Foreclosure Act claim must be dismissed because the Act creates no private right of action. *Rivera*, 2009 WL 2001175 at *8 n.19.

[12] "In analyzing claims under the CFA, . . . there are only three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009).  The Court has held that Plaintiffs have not pled a violation of New Jersey Court Rules or the Fair Foreclosure Act, therefore they have not pled the first element of their prima facie CFA case.

are similarly deficient.  Paragraph 31(b) of the Amended Complaint alleges, without elaboration, that Defendants "charged interest in violation of the final judgment."  Plaintiffs offer no facts to support this assertion, and the exhibits to the Amended Complaint provide no information from which the Court might infer a factual basis for this claim.  Without such information, the Court cannot determine how much Plaintiffs allege they were overcharged for interest.[13]  *See Rivera*, 2009 WL 2001175 at *9 (determining that a similarly unsupported allegation of excessive interest charges failed to plead a violation of law).

Paragraph 31(c) of the Amended Complaint provides, in its entirety, "FHA regulations limit attorneys fees see 24 CFR 203.552(B) to a maximum of $1350 in New Jersey."  Although unstated in that paragraph, Plaintiffs apparently attempt to allege that they were charged attorneys fees exceeding the amount permitted under FHA regulations.  As the Court explained in *Rivera*, "reasonable fees under FHA regulations are determined by reference to the state's maximum limit for fees."  2009 WL 2001175 at *9.  Here, the Amended Complaint fails to point Defendants (or the Court) towards any particular charge or line

---

[13] There is nothing inherently improper about the assessment of interest after the date of the foreclosure judgment; post-judgment interest is expressly authorized by Judge Shuster's Order of June 14, 2005.  (Amend. Compl. Ex. B)

11

item that exceeds what is permitted under New Jersey law.  To the extent Plaintiffs suggest that the $4,131.70 figure from the proof of claim is such a charge, the Court has already determined that there is no basis to conclude that sum was ever paid by Plaintiffs.

Because paragraphs 31(b) and 31(c) are insufficient as a matter of law, all claims based on those allegations will be dismissed.  Those claims include the remainder of the CFA claim[14] (Count 8) which is apparently based on Count 5, alleging "unfair and deceptive assessment and collection of fees" in violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a).[15]

### C.

Count 9 asserts that WaMu, Wells Fargo, and Aurora violated New Jersey's Truth in Consumer Contract, Warranty & Notice Act ("TCCWNA").  This count also fails to state a claim.

The TCCWNA provides in relevant part,

---

[14] The CFA claim also refers to a purported overcharge of $758 in attorneys fees, a sum that is not mentioned at any other point in the Amended Complaint.  (Amend. Compl. ¶ 94)  In fact, that figure may have nothing at all to do with the instant case — an identical allegation of a $758 overcharge appeared in paragraph 74 of the Complaint filed by the same attorneys in *Skypala.*

[15] The statute declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(1). The Amended Complaint does not assert a claim arising under 15 U.S.C. § 45(a), and even if it did, there is no private right of action under this statute.  *See Rivera*, 2009 WL 201175 at *8 n.21 and authorities cited therein.

> No seller, lessor, creditor, lender or bailee shall in the course of his business . . . enter into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time . . . the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15. A person who violates the TCCWNA is liable for a $100 civil penalty or actual damages, at the election of the consumer. N.J.S.A. 56:12-17.

Assuming that the mortgage and note are "consumer contracts" to which the TCCWNA applies, Plaintiffs have not identified which provisions of either document allegedly violate a clearly established right of Plaintiffs or responsibility of the relevant defendants.

Accordingly, the TCCWNA claim will be dismissed.

### D.

The Court next turns to Count 1 of the Amended Complaint, which alleges breach of contract against WaMu, Wells Fargo, and Aurora. Specifically, Plaintiffs assert that these defendants breached paragraph 6(c) of the note, and paragraphs 10 and 18 of the mortgage.

Paragraph 6(c) of the mortgage note provides, "[i]f Lender has required immediate payment in full . . . Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent

not prohibited by applicable law." (Amend. Compl. Ex. A)  As stated above, Plaintiffs have not sufficiently pled that Defendants collected attorneys fees in violation of any law. Accordingly, the breach of contract claim based on the mortgage note will be dismissed.

Paragraph 10 of the mortgage states that the Borrower may obtain reinstatement of the mortgage after default if the Borrower "tender[s] in a lump sum all amounts required to bring Borrower's account current including . . . foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding." (Amend. Compl. Ex. A)  This claim fails for two reasons.  First, Plaintiffs do not allege that they ever tendered in a lump sum all amounts required to bring their account current with the purpose of reinstating their mortgage; the sum ultimately tendered was in settlement of the foreclosure judgment.  Second, the Court has already ruled that Plaintiffs have not sufficiently pled overcharges of attorneys fees or interest associated with the foreclosure proceeding.

Lastly, paragraph 18 of the mortgage states that in a judicial proceeding to foreclose on the mortgage, "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence permitted

14

by Rules of Court." (Amend. Compl. Ex. A)  Because the Amended Complaint does not state a claim for violation of any New Jersey Court Rule, Count 1 fails to state a claim for breach of paragraph 18 of the mortgage.

Count 1 fails to state a claim under all three theories of liability.  Accordingly, Count 1 will be dismissed.[16]

**E.**

Count 2 alleges negligence against WaMu, Wells Fargo, Aurora, and Shapiro.

As this Court has previously held in indistinguishable cases, Plaintiffs' negligence claims with respect to all defendants except Shapiro are barred by the economic loss doctrine.  *See, e.g.*, *Martino*, 2009 WL 2365160 at *8.  Plaintiffs and those Defendants were parties to a contract, namely the mortgage and note.  Plaintiffs' claims are based on allegedly improper and illegal payments arising out of the parties' contractual relationship.

"Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law."  *Saltiel v. GSI Consultants*,

---

[16] Wells Fargo and Aurora also argue that Count 1 should be dismissed because the mortgage and note at issue were extinguished on the date of the final judgment of foreclosure, pursuant to the merger doctrine.  While that argument may be meritorious, Plaintiffs have failed in their threshold obligation to plead a breach of contract.  Thus, it is unnecessary to reach the merger doctrine issue.

15

Inc., 170 N.J. 297, 316 (2002). If a defendant "owe[s] a duty of care separate and apart from the contract between the parties," a tort claim such as negligence may lie. *Id.* at 314. But mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort. *Id.* at 316-17.

Plaintiffs argue that the economic loss doctrine is rendered inapplicable based on alleged emotional injuries or damage to their credit stemming from Defendants' actions. These are arguments that the Court has repeatedly rejected, *see, e.g.*, *Skypala*, 2009 WL 2762247 at *6, and rejects again in this case.

The negligence claim against Shapiro, however, is a different matter, as Plaintiffs had no contract with it. Shapiro asserts that the negligence claim against it must be dismissed because it had no duty to Plaintiffs. The Court agrees.

While there are some circumstances where an attorney may be liable to a third-party non-client for negligence, such circumstances are not pled here.

In *Banco Popular North America v. Gandi*, 184 N.J. 161, 179-81 (2005), the New Jersey Supreme Court stated that an attorney may be liable to a third party when he invites that party's reliance on his work or knows or should know that the party will rely on the attorney's work. It is simply not plausible that Shapiro invited Plaintiffs to rely on their

16

calculations, nor is it plausible that Shapiro should have known that Plaintiffs would rely on their calculations. Shapiro represented a party adverse to Plaintiffs.[17] Shapiro had no duty to Plaintiffs to accurately calculate any fees or costs associated with the foreclosure.

To the extent Plaintiffs' claims are based on the allegedly improper assessments of attorneys fees or interest, the same conclusion obtains. While Shapiro sent Plaintiffs a letter listing the payoff figure (Amend. Compl. Ex. C), it is still not plausible that Shapiro invited reliance on their calculations, nor is it plausible that Shapiro should have known that Plaintiffs would rely. That letter clearly stated, "**This is an attempt to collect a debt and any information obtained will be used for that purpose**." (Id. (emphasis in original))  Moreover, Plaintiffs' attorney was sent a duplicate copy of the payoff letter — thus it was he that was entrusted with identifying and correcting any irregularities in the sum demanded.[18]

Count 2 fails to state a claim for negligence against any of

---

[17] *See Ogbin v. Fein, Such, Kahn & Shepard, PC*, No. 08-4138, 2009 U.S. Dist. LEXIS 46954 at *9-10 (D.N.J. May 29, 2009) (Cavanaugh, D.J.) (holding that law firm who was plaintiffs' adversary in foreclosure proceeding owed no duty to plaintiffs, as law firm could not have expected that plaintiffs would rely on law firm's representations about payoff amounts).

[18] Further, as the Court has repeated above, there is no indication that Plaintiffs paid the sum demanded in the payoff letter. *See supra* nn.7 & 9.

17

the defendants.  Accordingly, that count will be dismissed.

## F.

Finally, Counts 3 and 4, respectively, allege breach of the duty of good faith and fair dealing, and unjust enrichment against WaMu, Wells Fargo, Aurora, and Shapiro.  To the extent these counts are based on the allegations in paragraph 31 of the Amended Complaint, the claims must be dismissed for the reasons already discussed.[19]

Also, Counts 3 and 4 against Shapiro fail for independent reasons.  With respect to the good faith and fair dealing claim, the Court holds that Shapiro had no such duty to Plaintiffs.  The duty of good faith and fair dealing is an implied duty in every *contractual* relationship.  *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001) ("A covenant of good faith and fair dealing is implied in every contract in New Jersey.").[20]  However, Plaintiffs do not (and cannot) allege that they had a contractual relationship with Shapiro, who represented WaMu, Wells Fargo, and Aurora in the foreclosure action and related dealings.  Without a

---

[19] Wells Fargo and Aurora argue that Count 3, like Count 1, should be dismissed based on the merger doctrine.  As stated *supra* n.16, the Court does not reach that issue.

[20] *See generally* Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

18

contract, there is no duty of good faith and fair dealing,[21] therefore Plaintiffs' good faith and fair dealing claim against Shapiro must be dismissed.

As to the unjust enrichment claim, Plaintiffs apparently assert that Shapiro was unjustly enriched by the allegedly excessive attorneys fee assessed in the proof of claim.  However, the Court has already determined that there is no basis from which to infer that sum was ever paid by Plaintiffs.  Based on the facts pled, there is nothing from which the Court can infer Shapiro received any unjust benefit.

### IV.

In light of the foregoing, the Court will dismiss the Complaint.  However, Plaintiffs will be granted leave to file a Motion to Amend the Complaint insofar as they wish to assert claims not considered in this Opinion or claims that would not be barred by the legal holdings the Court has made herein.  *See Phillips*, 515 F.3d at 245 (providing that plaintiffs whose claims are subject to a Rule 12(b)(6) dismissal should be given an

---

[21] To the extent there may be an extra-contractual duty of good faith and fair dealing under New Jersey law, Shapiro had no such duty for the reasons stated *supra* at Section III.E.

19

opportunity to amend their complaints unless amendment would be inequitable or futile).  The Court will issue an appropriate Order.

Dated:   September __4__th, 2009

                                        _s/ Joseph E. Irenas_
                                        **JOSEPH E. IRENAS, S.U.S.D.J.**